Filed 9/24/21  In re C.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C.H. et al., Persons Coming Under the Juvenile Court Law. | C092441 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.F. et al., <br><br> Defendants and Appellants. | (Super. Ct. Nos. JD234581, JD240346, JD240347, & JD240348) |

J.F. (mother) and J.H. (father), parents of the minors, appeal from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 395.)[1]  They assert there was insufficient evidence to sustain the allegations in the first amended dependency petition or to support removal from father's care and custody.  We will affirm the juvenile court's orders.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In mid-December 2019, mother delivered the newborn T.H. in the home where she lived with father.  Mother and T.H., with the placenta still attached, were transported by the maternal grandmother to the hospital.  Both mother and T.H. tested positive for opiates and methamphetamine.  T.H. was placed in the neonatal intensive care unit (NICU) due to severe withdrawals which required morphine to make him comfortable and allow him to rest.  Mother denied using methamphetamine but admitted using morphine, claiming she used it daily due to her cellulitis and chronic pain.  She also admitted she had not received any prenatal care and father knew about her drug use during pregnancy.

### *Initial Dependency Petitions*

On December 27, 2019, the Sacramento Department of Child, Family and Adult Services (Department) filed dependency petitions on behalf of the newborn minor T.H. and his three siblings, J.H., W.H., and C.H. (ages three to six years old), pursuant to section 300, subdivisions (a), (b), and (j).  As to all minors, the petitions alleged failure to protect pursuant to subdivision (b) due to mother's untreated substance abuse problem.  It was alleged that mother had previously participated in and successfully completed substance abuse treatment services with respect to the minor's sibling, C.H., but had later relapsed, and that she failed to submit to drug testing subsequent to her discharge from the hospital after the minor's birth.  The petition filed on behalf of T.H. also alleged serious physical harm pursuant to section 300, subdivision (a), due to mother's untreated substance abuse problems from which she failed and refused to rehabilitate, causing the minor to suffer serious physical harm, including withdrawal symptoms after testing positive for opiates and methamphetamine at birth.  The petitions filed on behalf of C.H., W.H., and J.H. also alleged abuse of sibling pursuant to section 300, subdivision (j), based on the aforementioned allegations.

At the Department's request, the juvenile court issued protective custody warrants as to all four minors. The facts supporting the warrants included the following: father did not go to the hospital at any time during mother's stay; father had no contact with the minor T.H. at any time; and mother did not see the minor after arriving at the hospital or visit the minor in the NICU. Mother was instructed to go straight to the drug testing center upon discharge from the hospital. However, mother refused and left the hospital. The Department's attempts to contact father by phone or in person were unsuccessful and his whereabouts were unknown. The maternal grandparents (grandparents) reported that the three oldest minors had been placed in their care by mother, who told them she could not care for the children adequately due to her cellulitis. The grandparents stated they were unaware of mother's substance abuse issues, but confirmed they were willing to raise the minors and share guardianship of the children with the maternal uncle.

According to the detention report, mother admitted using morphine she obtained on the street three times a day during her pregnancy with T.H. and, when morphine was not available, she would use other street drugs including methadone, oxycodone, and heroin. Father was aware of her drug use. The report included the parents' 2013 child welfare history, a referral after mother and C.H. tested positive at birth for heroin and opiates. Mother admitted at the time that she had used heroin for four years, including during her pregnancy with C.H., and that she illegally used methadone during the pregnancy. At that time, the parents agreed to participate in services which included an alcohol and other drug assessment, drug testing, and drug treatment.

In the current case, the Department stated all four minors were at substantial risk of harm, abuse, and neglect because father's whereabouts were unknown and reasonable efforts to locate him were unsuccessful and mother continued to suffer from untreated and ongoing substance abuse issues and failed to initiate drug testing and other services. Neither parent had visited the newborn minor since being admitted to the NICU. The Department completed background checks and a home assessment for the grandparents

3

and recommended the minors remain in their care.  The court authorized continued emergency detention of the minors pending the detention hearing.

The parents attended the January 3, 2020, hearing and objected to detention, arguing they voluntarily placed the three older minors with the grandparents and intended to do the same with the newborn minor.  They also requested visitation and services.  The court found there was a substantial danger to the physical health of the minors and no reasonable means to protect the minors short of removal, ordered the minors placed with the grandparents, and ordered reunification services and visitation for the parents.

*Jurisdiction/Disposition Report*

The jurisdiction/disposition report provided more detailed information regarding the parents' prior dependency proceedings related to C.H., noting mother had used heroin since 2010 and continued to use while she was pregnant with C.H., she agreed in late-2013 to participate in informal supervision services to treat her substance abuse but failed to utilize those services and left her residential treatment facility, and thereafter she tested positive for opiates.  She signed a corrective action plan but tested positive again for opiates in April 2014.  Like mother, father was addicted to heroin when C.H. was born.  He initially agreed to informal supervision services but, one month later, walked away from his residential treatment facility and failed to drug test as required.  He too signed a corrective action plan but tested positive for opiates in March 2014.

The Department received a referral in July 2019 concerning general neglect by father.  It was reported that the paternal relatives suspected father was using drugs again based on his appearance and affect, his inability to stay awake, and his glassy and bloodshot eyes.  There was concern about an injury sustained by C.H. when she cut her hand with a kitchen knife, and an injury sustained by J.H. which required medical attention after C.H. sprayed him in the eye with bathroom cleaner.  There was also concern that the family home had trash and debris all over the home and floor.  While the

4

investigative report was inconclusive, it was noted that the parents refused to engage in services at the time.

The Department concluded the minors were at risk of abuse or neglect due to mother's untreated substance abuse and medical health issues. It was noted that father had not had any contact with the Department, did not make himself available for an interview, had not visited the minor, and was not agreeable to drug testing. The Department further concluded there were no services available to maintain the minors in the parents' care and custody given that the parents had previously engaged in services designed to treat substance abuse issues yet, in December 2019, mother and the newborn minor tested positive for methamphetamine and opiates. Since that time, the parents had not engaged in consistent visitation with the minors and father had not visited T.H. since his birth. The Department recommended the court sustain the allegations in the petitions and order the minors to remain in the care of the grandparents and the parents to participate in reunification services.

### First Amended Dependency Petitions

On January 28, 2020, the Department filed first amended petitions as to all four minors setting forth additional allegations regarding mother's substance abuse issues.

### First Addendum Report

The first addendum report detailed the Department's continued attempts to contact and engage the parents, to no avail.

### Second Addendum Report

The second addendum report detailed the status of the parents' services. On May 10, 2020, the parents were referred to individual counseling and a program for drug testing and substance abuse counseling. Several weeks later, the social worker met with mother and encouraged mother to participate in her case plan services. However, mother stated she was " 'waiting for trial and that if the parent's [*sic*] win, then they will not have to do any services.' "

5

On July 1, 2020, staff at Strategies for Change confirmed the parents had not engaged in drug testing. The social worker contacted the methadone clinic to inquire whether mother was participating in her drug treatment services. Staff at the clinic stated a release of information would be required in order to share information. Between March 17, 2020, and July 2, 2020, mother sporadically texted the social worker. She initially claimed she was engaged in methadone services and counseling but would not provide the name of her counselor. When the social worker asked for the name of mother's methadone counselor, mother first replied that she did not remember and then stated she missed sessions at the methadone clinic due to transportation issues and needed to be readmitted. In a May 2020 text exchange, mother indicated she was still in treatment and had a prescription for pain medication. Mother also stated she felt father did not do anything wrong and she believed the report authored by the emergency response social worker was a " 'complete lie.' " The social worker encouraged mother to participate in services.

The social worker attempted to contact mother via telephone and text to inform mother of an upcoming court hearing, and again to obtain an update regarding mother's services and inquire about mother's participation at the methadone clinic. Mother texted the social worker stating she would call the following day. She did not.

On July 2, 2020, the social worker spoke with the grandmother who indicated she did not feel comfortable moving forward with the legal guardianship and wanted the parents to engage in reunification services. The grandmother stated that, in the event the parents' reunification efforts failed, she and the grandfather and the maternal uncle would be willing to provide legal permanency in the form of adoption. The grandmother reported the parents were inconsistent with visitation at times due to transportation issues, noting the mother did not feel comfortable utilizing public transportation during the pandemic. However, the grandparents met the parents in the park for visits on Sundays and the minors enjoyed the time with the parents.

The Department stated that, while section 361.5, subdivision (b)(13) applied to bypass mother for reunification services, it was in the minors' best interests to provide services to mother.

***Contested Jurisdiction/Disposition Hearing***

Neither parent attended the contested jurisdiction/disposition hearing on August 4, 2020, despite having been ordered to appear. After considering the jurisdiction/disposition report, both addendum reports, and argument from counsel, the court found the minors would be at substantial risk of detriment if left in the parents' care and custody, sustained the amended petitions, ordered the minors to remain in out-of-home placement, and ordered the parents to participate in reunification services. Both parents timely appealed.

## DISCUSSION

## I

### *Jurisdiction*

Mother contends there was insufficient evidence of future risk of harm to the minors at the time of the jurisdictional hearing and thus there was insufficient evidence to support the court's exercise of jurisdiction. As we shall explain, sufficient evidence supports the court's jurisdictional order.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 170.) " 'If there is any substantial evidence to support the [jurisdictional] findings of the juvenile court, a reviewing court must uphold the trial court's findings. All reasonable inferences must be in support of the findings and the record must be viewed in the light most favorable to the juvenile court's order. [Citation.]' " (*Id*. at p. 168.) "[I]ssues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" (*In re Matthew S.*

7

(1988) 201 Cal.App.3d 315, 321.) If supported by substantial evidence, the judgment or finding must be upheld, even though substantial evidence may also exist that would support a contrary judgment and the dependency court might have reached a different conclusion had it determined the facts and weighed credibility differently. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

A reviewing court may affirm a jurisdictional ruling if the evidence supports any of the counts concerning the children. (*In re Jonathan B*. (1992) 5 Cal.App.4th 873, 875; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Thus, dependency jurisdiction is appropriate where substantial evidence supports at least one jurisdictional finding, even if there are other findings that are not supported by substantial evidence. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

The amended petitions alleged, pursuant to section 300, subdivision (b), that all four minors were at substantial risk of harm, abuse, and neglect due to mother's long-term, untreated substance abuse problem as evidenced by: mother's relapse after informal supervision services in 2013 and reunification services in 2014; mother and T.H. testing positive for opiates and methamphetamine at T.H.'s birth; and mother not submitting to drug testing after her discharge from the hospital.

Mother argues there was insufficient evidence to support the court's exercise of jurisdiction under section 300, subdivisions (a), (b), and (j). " 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

8

Here, we conclude there was sufficient evidence to support the jurisdictional findings pursuant to section 300, subdivision (b). Therefore, we need not consider whether the other alleged statutory grounds for jurisdiction (i.e., the subds. (a) & (j) allegations) were supported by the evidence. (*In re I.J., supra*, 56 Cal.4th at p. 773.)

Subdivision (b) of section 300 applies if the minor "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the willful or negligent failure of the parent . . . to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse." (§ 300, subd. (b)(1).) Here, the requirements for subdivision (b) were met.

Prior to the birth of T.H., mother used illegal drugs including intravenous heroin. When C.H. was born in 2013, mother and C.H. tested positive for heroin and opiates. Father was also addicted to heroin at the time. Mother and father participated in informal supervision services designed to treat their substance abuse problems, but both did not fully avail themselves of those services and ultimately tested positive for drugs. The juvenile court asserted dependency jurisdiction over C.H. based, in large part, on the parents' substance abuse issues. Once formal dependency proceedings commenced for C.H., the parents completed reunification services, resulting in termination of dependency status. Thereafter, mother began abusing drugs again.

During her pregnancy with T.H., mother admittedly used street morphine, methadone, oxycodone, methamphetamine, and heroin and failed to obtain any prenatal care. As a result of mother's substance abuse during pregnancy, the newborn T.H. experienced symptoms of withdrawal (e.g., tremors, projectile vomiting, restlessness, & difficulty eating) so severe he required morphine and an extended stay in the NICU. Although the other three minors had been voluntarily placed with the grandparents, the

9

juvenile court issued protective custody warrants for all four minors based on mother's conduct as alleged in the petitions, as well as the fact that mother did not visit T.H. in the NICU or at any time after she arrived at the hospital. Father, whose whereabouts were unknown, did not go to the hospital at any time during mother's hospitalization or have any contact with T.H.

Throughout the dependency proceedings, both parents failed to drug test and neither had visited T.H. since he was admitted to the NICU. Mother failed to engage in services or attend scheduled appointments and had very little contact with the Department. Father never made himself available to or had contact with the Department and failed to engage in services or, with few exceptions, participate in the proceedings. The court noted that both parents had long-standing substance abuse issues. For purposes of section 300, subdivision (b), there was substantial evidence T.H. suffered serious physical harm as a result of mother's substance abuse, and there was a substantial risk that all four minors would suffer serious physical harm as a result of the parents' failure or inability to adequately supervise and protect them, the parents' willful or negligent failure to provide them with adequate food, clothing, shelter, or medical treatment, or the parents' inability to provide regular care for them due to mother's substance abuse.

Mother argues she and father made appropriate plans for the care of the minors with the grandparents, thus precluding the court from finding a risk of future harm or asserting jurisdiction. Mother's reliance on *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662 (*Maggie S.*) to support her claim is misplaced.

In *Maggie S.*, the mother, who had a history of substance abuse, criminal conduct, and domestic violence and who had previously failed to reunify with the minor's siblings, was incarcerated for selling drugs when she gave birth to the minor. The agency filed a petition pursuant to section 300, subdivisions (b) and (g), both of which included identical allegations that the mother was incarcerated and made an inappropriate plan for the minor's care and supervision thus endangering the minor's physical health and safety

10

and placing the minor at risk of physical harm and damage. (*Maggie S., supra*, 220 Cal.App.4th at pp. 664-665, 672.) The mother had given verbal consent to release the minor to the maternal grandparents and the maternal uncle, who later informed the social worker that they were unable to care for the child. The mother also identified her godmother as a prospective placement. However, the social worker was unable to reach the godmother and the agency detained the minor "because there were 'no appropriate relatives at this time.' " (*Id.* at p. 665, fn. omitted.) The juvenile court sustained the petition, ordered out-of-home placement for the minor, and bypassed the mother for reunification services. (*Id.* at p. 667.) The social worker continued efforts to place the minor with the godmother but was unsuccessful and, after denying mother's section 388 petition requesting reunification services, the court terminated the mother's parental rights. (*Maggie S.,* at pp. 668-670.)

The Court of Appeal reversed the juvenile court's jurisdictional order finding the court was unaware at the time of the jurisdiction/disposition hearing that the mother had designated the godmother in writing as a potential caregiver for the minor and that the social worker had spoken with the godmother, who confirmed at the time that she was willing to care for the minor. Not having that information, the juvenile court was under the misimpression that the mother had not arranged for the minor's placement with a willing caregiver. (*Maggie S., supra*, 220 Cal.App.4th at pp. 672, 674.) With respect to the subdivision (b) allegation, the appellate court concluded the fact that the godmother had had a foster care license at some point and lost it and had had a foster parent application rejected because she did not release her medical records did not mean she presented a substantial risk of serious physical harm to the minor. (*Id.* at p. 673.)

Here, mother was not incarcerated. The petitions did not allege failure to make an appropriate plan for the minors' care and supervision. Instead, the petitions alleged mother's history of substance abuse as to C.H., as well as mother's continued substance abuse resulting in positive toxicology results for both her and T.H. at birth. In *Maggie S.*,

11

the mother made arrangements for the minor *while she was incarcerated*, meaning the mother had no ability to interfere with the voluntary placement while she remained incarcerated.  Here, in contrast, the parents made arrangements for the three oldest minors to be cared for by the grandparents while the parents went about their lives.  After continuing to abuse drugs (with father's knowledge) during her pregnancy, mother gave birth to T.H., who along with mother tested positive for illicit drugs and who suffered severe withdrawal symptoms and remained in the NICU until he could then be placed with the grandparents.  While the parents voluntarily placed the minors with the grandparents, there was nothing preventing the parents from retrieving and keeping the minors in their custody and continuing to use drugs while the minors were in their care.  Indeed, mother was using drugs while pregnant with T.H. and while the other three minors were already in the grandparents' care.  *Maggie S.* is inapposite.

Given the parents' history of substance abuse, and continued abuse despite having successfully completed reunification services in the C.H. dependency case, and given the parents' refusal to drug test, their failure to communicate with the Department, and their minimal participation in the dependency proceedings, there was sufficient evidence to support the juvenile court's jurisdictional finding that the minors were at substantial risk of abuse or neglect.  "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

## II

### *Removal*

The parents contend there was insufficient evidence to support the court's dispositional order removing the minors from father's custody.[2]  We disagree.

---

[2]     Neither parent argues there was insufficient evidence to support removal of the minors from mother's care and custody.

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); see *In re Heather A., supra*, 52 Cal.App.4th at p. 193; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The court also must "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]" (*In re T.W., supra*, 214 Cal.App.4th at p. 1163.)

Here, there was sufficient evidence to support the court's finding by clear and convincing evidence that the minors would be at substantial risk if left in the father's care and custody. The court based its finding, in part, on mother's untreated substance abuse issues, her untreated medical condition, and her refusal to participate in informal services.

The court also found mother lacked any insight into the Department's involvement in her life, as she consistently stated reasons other than her drug use for the need to place the minors with the grandparents and "dramatically understat[ed] her drug use." The court also based its detriment finding on father's history of drug addiction and his refusal to participate in the dependency proceedings, make himself available to the Department and the court, or participate in informal services, including drug testing.

The parents argue the court's detriment findings were not supported by sufficient evidence. They argue evidence of father's prior substance abuse problems was irrelevant because he was able to reunify with C.H. in 2015. The fallacy in that argument lies in the fact that mother, too, had a prior substance abuse problem and was also able to reunify with C.H., only to begin using again such that both she and T.H. were drug positive at T.H.'s birth. The fact of father's prior serious drug issues was directly relevant, particularly in light of the fact that father was aware that mother was abusing drugs during her pregnancy with T.H. and he refused to drug test. The juvenile court may consider the parent's past conduct as well as present circumstances when deciding whether removal is warranted. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917; *In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

The parents argue that father's refusal to participate in the proceedings or informal services and his refusal to drug test could not be used to "punish him" because the court had no authority to order him to do so prior to asserting jurisdiction over the minors. After the minors were detained but before jurisdiction was established, the juvenile court was compelled, pursuant to section 319, to order "services to be provided as soon as possible to reunify the child and their family, if appropriate," which it did. (§ 319, subd. (g); see *In re E.E.* (2020) 49 Cal.App.5th 195, 202.) "A parent's participation in services, whether before jurisdiction and disposition or after, is always voluntary." (*In re E.E.,* at p. 202.) "That is not to say there are no consequences for failing to cooperate in the investigation or participate in services. One consequence is that those failures 'can be

14

used later as evidence in a review hearing or a hearing on a [section 300] petition.' " (*Ibid.*)  The court properly considered father's refusal to participate in the proceedings, engage in informal services, and drug test.

The parents repeatedly argue their voluntary arrangement for appropriate care of the minors with the grandparents alleviated the need for jurisdiction and removal.  The juvenile court properly rejected that argument, finding the arrangement was "on-again, off-again" as evidenced by the fact that the minors resided with the grandparents on some occasions and with the parents on other occasions and there was "no assurance that the parents will continue to allow the children to reside with the maternal grandparents and that they will once again be returned to the parents' care without orders preventing that from occurring as happened previously."  The parents argue their voluntary placement of the minors with the grandparents was no different than the Department's recommendation that the court place the minors with the grandparents.  They are wrong.  There is a significant difference between the two:  court-ordered placement of the minors with the grandparents prevented return of the minors to the parents without further court orders.  Voluntary placement did not.  That difference becomes important where the parents have a long history of substance abuse followed by a failure to participate in informal or formal services or drug test.

The parents contend the court's removal order violated section 361, subdivision (c), which prohibits removal of a dependent child "from the physical custody of his or her parents . . . *with whom the child resides at the time the petition was initiated*" without clear and convincing evidence of a substantial danger to the child.  (§ 361, subd. (c)(1), italics added.)  Relying on *In re Dakota J.* (2015) 242 Cal.App.4th 619 (*Dakota J.*), the parents argue removal was improper because the minors were not living with father at the time the dependency petitions were filed.  We are not persuaded.

In *Dakota J.*, the juvenile court ordered removal of the minor who lived with her mother, and the minor's two older siblings who for the past six or seven years had lived

with their stepgrandfather, Michael, and had seen the mother only a few hours each week. (*Dakota J., supra*, 242 Cal.App.4th at p. 623.)  Mother appealed claiming the court violated section 361, subdivision (c) by ordering removal of the two older siblings who did not live with her when the petition was filed.  (*Id.* at p. 627.)  The appellate court agreed, construing the word " 'resides' " to mean " ' " 'to dwell permanently or for a considerable time' " ' [citations]" and concluding the statute did not contemplate removal from a parent not living with the child at the relevant time.  (*Ib.* at p. 628.)  The court noted that its interpretation was compatible with case law emphasizing a major goal of the dependency system to preserve the family unit.  (*Id.* at pp. 628-629.)  That is to say, to maintain children in their parents' homes " ' "where it [is] safe to do so" ' " and to order removal only as a last resort " 'when the child would be in danger if allowed to reside with the parent.'  [Citation.]"  (*Id.* at p. 629.)

*Dakota J.* is distinguishable from the case before us.  Here, mother and father were living together when T.H. was born.  T.H. was immediately taken to the hospital where he remained in the NICU well past the date the dependency petitions were filed.  The parents suggest that T.H. was not residing with father and "would be" residing with the grandparents once he was discharged from the hospital.  As of the filing of the petitions, T.H. had been in the hospital NICU and had never lived with the grandparents.  For purposes of section 361, subdivision (c)(1), we conclude T.H. resided with the parents.

As for the remaining minors, unlike the two older minors in *Dakota J.* who had lived with the stepgrandparent for a considerable time (i.e., over five years), the three older minors had been staying with the grandparents for about a month when the petitions were filed, not permanently.  The juvenile court found that this arrangement was "on-again, off-again."  Further, as previously discussed, there was nothing preventing the parents from retrieving the minors from the grandparents and keeping the children in their physical custody.

16

The parents argue father was nonoffending and "it should be an impossibility to not be named in a petition but have one's children removed by clear and convincing evidence." As discussed in part I of this opinion, the allegations against mother were sufficient to establish jurisdiction over the minors. Because the parents do not dispute that they were living together when the petitions were filed, a valid removal order as to mother was also valid as to father. As long as the parents continued to live together, it was not safe to maintain the minors in the parents' home due to mother's ongoing substance abuse problems, father's awareness of mother's substance abuse, and the parents' refusal to drug test or participate in informal services.

The parents argue there was insufficient evidence to support the court's finding that there were no reasonable means by which to protect the minors without removing them from father's custody, and that the court failed to consider reasonable alternatives to removal. We disagree. Section 361, subdivision (c) provides that the court "shall consider, as a reasonable means to protect the minor, each of the following: (A) The option of removing an offending parent . . . from the home. (B) Allowing a nonoffending parent . . . to retain physical custody as long as that parent . . . presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (§ 361, subd. (c)(1).) The juvenile court found there were no reasonable means to protect the minors short of removal based on mother's untreated substance abuse issues which rendered her unable and incapable of protecting the minors, and the fact that she lacked insight into the problems leading to the Department's intervention. The court's finding was also based on father's failure to make himself available to the court and his refusal to participate in informal services. Finally, the court rejected the parents' claim that they would allow the minors to reside with the grandparents, noting there was nothing short of a court order to prevent return of the minors to the parents as had previously occurred.

17

The parents assert the court could have placed the minors in the home with father on the condition that (1) mother not remain in the family home; (2) father present an acceptable plan to protect the minors from future risk of harm; (3) father comply with frequent random unannounced home visits; or (4) father be subject to strict supervision. Each of these alternatives would have relied on father's willing and consistent communication with the Department and the court, something he refused to do throughout the dependency proceedings. The suggested alternatives would have been dependent upon father's willingness to participate in family maintenance services, including drug testing, something father had also refused to do. Further, father's stated intention to place the minors in the care of the grandparents if he were to obtain custody did not alleviate the risk that father could, at any time, retrieve the minors and once again keep them in the home he and mother shared.

We reject the parents' assertion that the Department failed to make reasonable efforts to prevent or eliminate the need for removal. Despite the Department's best efforts, mother maintained minimal contact with the Department and father refused to contact or cooperate with the Department or participate in the proceedings. Despite having a history of drug abuse and addiction and despite mother's current use of various illegal substances with father's knowledge, neither parent drug tested or engaged in the substance abuse counseling services to which they were referred in May 2020. On this record, we conclude reasonable efforts were made to prevent the removal of the minors.

In light of father's refusal to participate in the dependency proceedings, and the parents' history of drug abuse despite having participated in reunification services designed to address those problems, we conclude substantial evidence supports the court's order removing the minors from father's custody.

18

# III

## *Disposition and Placement*

The parents contend the juvenile court erred when it failed to make the required findings of detriment before denying father's request to have the minors placed with him pursuant to section 361.2, subdivision (a).

Section 361.2 establishes the procedures a court must follow for placing a dependent child following removal from the custodial parent pursuant to section 361. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1820.) When a court orders removal of a minor under section 361, the court first must determine whether there is a parent who wants to assume custody who was not residing with the minor at the time the events that brought the minor within the provisions of section 300 occurred. (§ 361.2, subd. (a).) "If that parent requests custody, the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a), italics added.) The juvenile court must make the detriment finding by clear and convincing evidence. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 700.) We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329.)

Here, section 361.2 did not apply to father because, as we previously concluded, T.H. resided with both parents and, while the other three minors had been staying with the grandparents temporarily, there were periods of time when those children lived with the parents. Thus, father was not a noncustodial parent for purposes of section 361.2, subdivision (a).

Even assuming father was a noncustodial parent, the minors could not be placed with him for all of the reasons previously stated, including that father was living with mother and father refused to communicate with the Department, participate in the

19

dependency proceedings, or engage in drug testing. Father's stated plan to place the minors with the grandparents was not sufficient to mitigate those issues due to the fact that there was nothing preventing him from retrieving the minors from the grandparents. A nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, but only "in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.' " (*In re Isayah C., supra*, 118 Cal.App.4th at p. 697.) Here, there was sufficient evidence that father's choices would be detrimental to the safety and well-being of the minors.

## DISPOSITION

The juvenile court's orders are affirmed.


   /s/   
HOCH, J.


We concur:


   /s/   
BLEASE, Acting P. J.


   /s/   
RENNER, J.